1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                         **DISTRICT OF ARIZONA**

10
11

12   **DIANA J. FULLER,**                    )
13              **Plaintiff,**               )        **2:10-cv-00288 JWS**
14        **vs.**                            )        **ORDER AND OPINION**
15   **MARICOPA COUNTY COMMUNITY**           )        **[Re: Motion at Docket 79]**
     **COLLEGE DISTRICT,**                   )
16                                           )
              **Defendant.**                 )
17   _____     )

18
                        **I.  MOTION PRESENTED**
19
            At docket 79, defendant Maricopa County Community College District ("the
20
     District" or "defendant") moves for summary judgment pursuant to Federal Rule of Civil
21
     Procedure 56.  Plaintiff Diana J. Fuller ("Fuller" or "plaintiff") opposes the motion at
22
     docket 82.  Defendant's reply is at docket 93.  Oral argument was requested,  but would
23
     not assist the court.
24
            At docket 92, the District moves to strike the affidavits of Raul S. Monreal, Jr.,
25
     Jean Ann Abel, and Rosemary Kesler.  Fuller opposes the motion and moves to defer
26
     consideration of defendant's motion for summary judgment at docket 94.  The District's
27
     reply is at docket 95.
28

                                          -1-

## II.  BACKGROUND

Fuller was hired by the District in 1984 to teach office education and word processing.[1]  Fuller held both a bachelor's degree and a master's degree.  The District used a salary schedule to determine compensation for instructors.  Placement on the schedule was a function of the minimum qualifications for the position–that is, an instructor could be placed on the salary schedule by virtue of having a master's degree, or for some positions, a bachelor's degree and sufficient experience. Horizontal movement on the schedule was a function of hours earned towards an advanced degree.  Vertical movement was based on years of relevant experience.

When she was hired, plaintiff was placed at Step 6 of the 1984-1985 salary schedule, and her salary was $26,596.[2]  Fuller maintains that she was placed at Step 6 based on her bachelor's degree and work experience, which moved her to the maximum vertical placement for a new hire.  The District argues that her master's degree placed her on the schedule and that her considerable work experience placed her at Step 6 which was the maximum for a new hire.

Minimum requirements for a faculty position varied based on whether the courses to be taught were classified as "academic" or "occupational."  Plaintiff maintains that she was hired as an occupational instructor; defendant maintains that she was hired as a dual discipline instructor.  Academic courses required a master's degree. Occupational courses required a bachelor's degree and a certain level of experience. Both parties agree that word processing was occupational.  The parties disagree as to whether office education was occupational or academic.

In 2001, Fuller filed a salary appeal, based on her salary placement at the time of her hire.  The appeal was dismissed because the Residential Faculty Policy Manual

---

[1]*See, e.g.*, Doc. 78-1 at 22.

[2]Doc. 78-1 at 67, Doc. 78-3 at 13.

("RFP") in place when she was hired did not provide for a salary review process.  Fuller then submitted a complaint to Phil Randolph ("Randolph"), the District's Vice-Chancellor of Human Resources.  Randolph ultimately concluded that Fuller's master's degree was applied to meet the minimum qualification to teach an academic course as a dual discipline instructor.  In a June 14, 2004 written complaint to the District, Fuller identified several women who received the salary credit for their master's degrees that Fuller sought.[3]  Fuller filed a charge of discrimination with the Arizona Civil Rights Division in 2004, which was forwarded to the Equal Employment Opportunity Commission ("EEOC").  In her written charge, Fuller identified three men and four women who received salary adjustments based on their master's degrees.[4]

Fuller initially filed suit in Arizona state court, in 2005, alleging that she was discriminated against on the basis of sex.  Her complaint incorporated by reference allegations that both men and women received the salary adjustments that she sought.[5] Ultimately, Fuller voluntarily dismissed that complaint.  In 2009, Fuller filed a charge of discrimination with the EEOC.  Fuller did not identify any women who received salary adjustments based on their master's degree, but the factual premise of her discrimination claim was identical.  The EEOC declined to investigate beyond a preliminary review, and Fuller received a right-to-sue letter.[6]

Fuller filed the present lawsuit in February 2010, alleging violations of Title VII, the Lily Ledbetter Fair Pay Act of 2009, and the Equal Pay Act.

[3]*Id.* at 5, 6.

[4]Doc. 28-1 at 10.

[5]Doc. 28-1 at 3, 10.

[6]Doc. 78-3 at 17.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7]  The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[8] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9]  In resolving a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.[10]  The reviewing court may not weigh evidence or assess the credibility of witnesses.[11]  The burden of persuasion is on the moving party.[12]

### IV.  DISCUSSION

**A.  Fuller's Title VII Claim**

Under the *McDonnel-Douglas*[13]  framework, a plaintiff must first establish a prima facie case of sex discrimination.  Specifically, a plaintiff must show that 1) she is a member of a protected class, 2) that she was qualified for the position she held, 3) she was subject to an adverse employment action, and 4) similarly situated individuals outside her protected class were treated more favorably.[14]  If the plaintiff is successful, then the burden of production shifts to the defendant to articulate a legitimate, non-

[7]Fed. R. Civ. P. 56(a).

[8]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[9]*Id.*

[10]*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).

[11]*Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[12]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[13]*McDonnel-Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[14]*See, e.g.*, *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000).

discriminatory reason for the disparate treatment.[15]  The burden then shifts back to the plaintiff to show that the defendant's reason is pretextual.

The first two elements of plaintiff's prima facie case are not in dispute.  Fuller is female, and the District does not argue that she was unfit for any position she held from 1984 until 2003.  The District's primary argument is that Fuller is unable to satisfy the fourth prong.  The District maintains that Fuller admitted that both men and women were treated more favorably than she was.  The District also argues that the two men who plaintiff identifies as having received more favorable treatment were not similarly situated.  Although Fuller maintains that the District "has not disputed the first three elements"[16] of Fuller's prima facie case, if the District's version of the facts is correct, then the third element–an adverse employment action–would not be met.

**1. Adverse Employment Action**

The first question is whether Fuller has established that she was subjected to an adverse employment action.  This depends on whether she was hired to teach academic and occupational courses or only occupational courses.  The District maintains that office education was an academic course.  Fuller maintains in her response that office education was occupational.  If the course was academic, then plaintiff's master's degree was a minimum qualification and should not have been taken into account for purposes of salary advancement.  If it was occupational, then plaintiff's master's degree would have rendered her eligible for salary increases that she did not receive.

The District cites, among other things, the 1984-1986 RFP and the April 1981 Hiring Qualifications for Faculty.[17]  Fuller maintains that the 1981 Hiring Qualifications would not have been in place in 1984 when she was hired and cites documents that

---

[15]*Id.* at 1123–24.

[16]Doc. 82 at 7.

[17]Doc. 78-1 at 42, 73.

1   were seemingly created in 2003 and 2004 to support her position that office education

2   was an occupational course at the time of her hire.[18]   The District also cites Fuller's

3   deposition, in which she stated that one course that she was hired to teach was

4   academic.[19]   Even viewing the conflicting evidence in the light most favorable to Fuller,

5   Fuller's admission that she was hired to teach an academic course in addition to an

6   occupational course is fatal to her Title VII claim.  Because Fuller has recognized that

7   she was hired to teach an academic course in addition to an occupational course,

8   summary judgment in defendant's favor is appropriate as a matter of law based on a

9   failure to satisfy the third element of a prima facie case under *McDonnel-Douglas*–Fuller

10  was not subjected to an adverse employment action because instructors hired to teach

11  academic courses were required to have a master's degree.

12      **2. Similarly Situated Employees**

13      Even if the court were to ignore Fuller's concession that she was hired as a dual

14  discipline instructor, Fuller has also conceded that both women and men received the

15  salary adjustment she sought.  Fuller argues formally that two male faculty members,

16  Charles Esparza ("Esparza") and David Cost ("Cost") received horizontal salary

17  advancements for having master's degrees.  The District argues, however, that plaintiff

18  has admitted (many times under oath) that both men and women received more

19  favorable treatment in the form of salary adjustment based on their master's degrees.

20  The District also argues that neither Esparza nor Cost were similarly situated to Fuller.

21      Plaintiff stated at her deposition that she believed three women received salary

22  adjustments as a result of their master's degrees.[20]   Although Fuller maintains that

23  those women were not employed at the same campus, that distinction is immaterial.

24  The women that Fuller identified as having received salary adjustments based on their

25  _____

26      [18]Doc. 83-2 at 2, 5, 23.

27      [19]Doc. 93-1 at 3–4.

28      [20]*See, e.g.*, doc. 78-1 at 30–34.

master's degrees were employees of the District whose salaries were determined according to the same criteria.[21]  Finally, the District has presented evidence that only one other person–a woman named Mary Long ("Long")–was hired as a dual discipline instructor in 1984.[22]  Long had a slightly higher starting salary than Fuller, even though Fuller was at a higher vertical position on the pay chart, due to horizontal placement. The District included an unsupported footnote in its motion explaining that Long received horizontal credit on the salary chart based on a second master's degree.[23]  If that is correct, then it lends further support to the conclusion that Fuller's salary was properly determined and that her master's degree was used as the minimum qualification to teach an academic course as a dual discipline instructor, and therefore that Fuller suffered no adverse employment action.  If that is not correct, and Long received horizontal credit for having a master's degree, then Long's salary adjustment is fatal to Fuller's Title VII claim because she is a similarly situated women who would have received the very treatment Fuller sought.

Plaintiff has not made out a prima facie case of sex discrimination, and summary judgment in defendant's favor is appropriate with respect to plaintiff's Title VII claim.

**B. Fuller's Other Claims**

Fuller argues that the District violated the Lilly Ledbetter Fair Pay Act.  However, as the District points out, the Act functioned to define when an unlawful employment practice occurs with respect to discriminatory compensation.[24]  The Ledbetter Act did not create a new federal cause of action.

---

[21] *See Nicholson v. Hyannis Air Svc., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009) ("[E]mployees need not be identical; they must simply be similar in all material respects.") (internal quotations omitted).

[22] Doc. 78-1 at 92.

[23] Doc. 79 at 5 n.6.

[24] *See* 42 U.S.C. § 2000e-5(e)(3)(A).

1    Fuller also alleges that the District violated the Equal Pay Act.[25]   "In an Equal Pay

2    Act case, the plaintiff has the burden of establishing a prima facie case of discrimination

3    by showing that employees of the opposite sex were paid different wages for equal

4    work."[26]   Specifically, a plaintiff must show that the work in question was "substantially

5    equal."[27]   Here, however, Fuller has not shown that any pay disparity could be

6    categorized by sex.  For instance, Long, the only other dual discipline instructor hired in

7    1984, was given a starting salary of approximately $2000 more than Fuller.  That is

8    almost exactly the same difference between Fuller's annual salary at the end of her

9    employment and the salaries of Ray Esparza and David Cost.[28]   Fuller therefore has not

10   made out a prima facie case of discrimination under the Equal Pay Act.

11   **C. Motions at Dockets 92 & 94**

12         Although Fuller's argument that the District's motion to strike violates Local

13   Rule 7.2 appears to have merit, the affidavits of Raul S. Monreal, Jr., Jean Ann Abel,

14   and Rosemary Kesler do not bear on the conclusions reached above.[29]   Although the

15   affidavits support Fuller's contention that her initial salary placement was based on her

16   bachelor's degree and relevant work experience, as opposed to her master's degree,

17   the content of those affidavits does not alter the fact that Fuller has acknowledged that

18   several women received horizontal salary credit for their master's degrees.  At most

19   then, the affidavits suggest that Fuller's initial salary placement may have been error.

20   Erroneous calculations are not contemplated by Title VII or the Equal Pay Act.

21   Consequently, the District's motion to strike and Fuller's motion to delay consideration

22   of the District's motion for summary judgment are moot.

---

23

24   [25]*See* 29 U.S.C. § 206(d)(1).

25   [26]*Stanley v. Univ. of So. Cal.*, 178 F.3d 1069, 1073–1074 (9th Cir. 1999).

26   [27]*Id.* at 1074.

27   [28]*Compare* doc. 78-1 at 92 *with* doc. 82 at 13–14.

28   [29]*See* LRCiv. 7.2(m)(2).

1

## **V.  CONCLUSION**

2    For the reasons above, defendant's motion at docket 79 for summary judgment

3 pursuant to Federal Rule 56 is **GRANTED**.  The Clerk shall please enter judgment for

4 defendant on all claims.

5    The motions at dockets 92 and 94 are **DENIED** as moot.

6    DATED this 23rd day of April 2012.

7

8
_____
/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28